## McMAHAN v. COPIAH COUNTY, MISS.

No. 10275—Opinion Filed Oct. 25, 1921.

Rehearing Denied Jan. 10, 1922.

(Syllabus.)

1. Counties—Sale of Bonds—Notice to Bidders—Sufficiency.

A notice to bidders for municipal bonds is not defective because the notice fails to state the amount of the bonds, the date of their maturity, where they are payable, or the rate of interest they are to bear, where the notice as published refers to the order authorizing the issuance of the bonds.

2. Same—Office of Publication Notice.

The publication notice for bids for bonds simply amounts to a public declaration that the bonds are for sale and inviting bids therefor, and, where the notice refers to the order authorizing the bonds, all persons submitting bids are referred to the order, and when a bid is submitted, the same is presumed to have been submitted with full knowledge of everything contained in the order referred to.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by Copiah County, Mississippi, against A. J. McMahan for breach of contract to buy bonds. Judgment for plaintiff, and defendant brings error. Affirmed.

Keaton, Wells & Johnston, for plaintiff in error.

Ames, Chambers, Lowe & Richardson, for defendant in error.

PITCHFORD, J. The defendant in error commenced this action in the district court of Oklahoma county, Oklahoma, against the plaintiff in error for breach of contract for the purchase of certain road bonds. The parties hereafter will be referred to as they appeared in the trial court.

Plaintiff and defendant practically agree that the law of Mississippi was strictly followed authorizing the issuance of the bonds. The clerk was authorized by the board of supervisors of Copiah county to have the bonds lithographed and to advertise for bids. This the clerk proceeded to do; the notice as published being as follows:

"Notice of Sale of District Two Bonds. It is ordered by the board of supervisors that the clerk of the board procure the lithographed bonds heretofore provide. for at this meeting, for supervisors' district No. Two, and that he give notice for the sale of all or part of said bonds, on the first Monday of April, 1913; that sealed bids may be filed up to the time of sale, each bid to be accompanied by a certified check for at least five per cent. of the amount of bonds bid for, and that all of such portions of the bonds as the board may elect at the time, shall be sold to the highest bidder or bidders for cash, at not less than the par value of the bonds.

"H. Shelton, Clerk."

On the 9th of April, 1913, the defendant wired the Hazelhurst Bank, as follows:

"Oklahoma City, Okla., Apr. 9, 1913.

"Bank of Hazelhurst:

"Bond market demoralized, but will take road bonds if you can get five one-half at par.

"A. J. McMahan."

On April 12, 1913, J. E. Taylor wired the Bank of Hazelhurst the following:

"Memphis, Tenn., Apr. 12, 1913.

"Bank of Hazelhurst:

"Close deal par advise my expense, naming check required.

"J. E. Taylor."

On the last named date, the board adopted a resolution accepting the bid of McMahan, as follows:

"In the Matter of the Sale of $75,000 of Copiah County Supervisors' District No. Two Road Bonds, it appearing to the board that A. J. McMahan has offered par and accrued interest to date delivery of bonds for said issue provided the same shall bear interest at five and one-half per cent. per annum, and it appearing to the board that this is the highest and best offer received for said

bonds, it is ordered that said bid be and the same is, hereby accepted and the clerk of the board is hereby directed to request said purchaser to furnish a certified check for the sum of five per cent. per annum of said bid as required by the order offering said bonds for sale and to furnish him with a certified copy of the proceedings of the board looking to the issue of said bonds."

On April 17, 1913, Taylor went to Hazelhurst and insisted that the interest be made payable semi-annually, and insisted that he be permitted to deposit $2,000 in lieu of the five per cent. of the amount bid. The board refused to change the time for the payment of the interest, but did agree to accept $2,000 in lieu of five per cent.; this amount was deposited by Taylor, as the agent of McMahan, which consisted of a certified check on the American National Bank of Oklahoma City and a draft issued by the Continental and Commercial Trust & Savings Bank of Chicago for $1,000 each. Afterwards McMahan failed to pay for the bonds which necessitated their sale to other parties and payment on the checks deposited by Taylor was stopped. Upon trial, the jury returned a verdict in favor of the plaintiff for $2,000, with interest at six per cent. from September 1, 1913. Judgment was rendered in favor of the plaintiff in accordance with the verdict, from which the defendant appeals.

The brief of the defendant is devoted to two propositions: The first being that the plaintiff failed to make out a case against the defendant, either by the pleadings or the evidence; the second being that no sufficient note or memorandum was made in writing and subscribed by the defendant or his agent to satisfy section 941, Rev. Laws 1910; contending that there could be no contract unless the minds of the parties met upon every material element necessary to establish contract relations; and further, that even if the proof did establish that the minds of the parties met with an intent to establish contract relations, such contract would be void under the statute of frauds, unless there was some note or memorandum thereof in writing and subscribed by the defendant or by his agent

The main question for our consideration involves the determination of whether or not a contract was entered into by the plaintiff and the defendant, which in law would bind the parties, respectively. In order to determine this question, it is necessary to ascertain what was done by the board of supervisors prior to the advertisement by the clerk of the board for bids. It appears from the evidence that the board strictly observed the provisions of the Mississippi law

authorizing the issuance of the bonds. The notice or advertisement for bids failed to mention the amount of the bonds, when or where they were to be paid, and fails to contain any reference to the rate of interest the bonds would draw. The only reference to the kind of bonds to be sold is district 2 bonds "heretofore provided for at this meeting." The notice required that all bids should be accompanied by a certified check for five per cent. of the amount bid. The defendant claims that he was ignorant of the proceedings of the board leading up to the advertisement for bids; that all he knew was that they were offering $75,000 worth of road bonds, and that the bonds were to be serial under the law.

It is also contended that the telegram sent to the Hazelhurst Bank, on the 9th day of April, was not to the board, and that he had not authorized the bank as his agent or otherwise to deliver the same to the board; that the bank was in no way his agent, and that the telegram was only intended as an offer to negotiate for the purchase of the bonds with a purpose of thereafter entering into a written contract if proper terms could be agreed upon.

The further contention is that, in order to constitute an offer such as would by acceptance become a binding contract, it was necessary for plaintiff to prove that, when the telegram was sent to the bank and delivered to the board, defendant thereby intended to be bound in the event his bid was accepted.

As to the lack of knowledge of the defendant concerning the proceedings of the board prior to the notice of the clerk inviting bids, it is inconceivable that he would make a bid for the bonds as shown by the telegram to the Hazelhurst Bank when the only knowledge he had was that the issue amounted to "$75,000 road bonds," and that they were serial. The order of the board was referred to in the notice for bids—anyone who decided to bid had an opportunity to read the order, and if the order had been read,. the defendant would have been informed of everything of which he claims he was ignorant. The publication notice simply amounted to a public declaration that the board of supervisors of Copiah county, Mississippi, were offering for sale and inviting bids for road bonds district No. Two in accordance with the orders theretofore made by the board. All persons desiring to submit bids were referred to the order, and when McMahan, through the bank, submitted his bid, he is presumed to have made the same with full knowledge of everything contained in the order referred to.

In Owen v. City of Marion et al. (Iowa) 103 N. W. 381, the sixth paragraph of the syllabus is as follows:

"A notice to bidders for street improvement work is not defective for failure to state when the work is to be done, the kind of material to be used, when the payments are to be made, and when proposals are to be acted on; where it refers to the specifications which cover these points."

In Denton v. City of Atchison (Kan.) 8 Pac. 750, in the body of the opinion, the court says:

"The advertisement for bids in plain terms provided that the walks were to be built in accordance with the plans and specifications on file in the office of the city engineer, and the proposal made by the plaintiff to the city in equally plain terms offered to construct the walks according to those plans. The plans, therefore, became a part of the agreement, as much as if they had been incorporated in or attached to a formal written contract."

The defendant denies that he authorized the Hazelhurst Bank to deliver the telegram to the board of supervisors. What was intended? The telegram speaks for itself—the defendant says he will take the bonds if the bank could get them at five one-half at par. This authorized the bank as the agent of the defendant, to submit a bid for the bonds upon these terms. Instead of doing this, the telegram was submitted as the offer of the defendant, and we hold that this was a sufficient offer on the part of the defendant. The telegram must be read in connection with the orders of the board and the notice published by the clerk. In no sense can the telegram be considered as a mere preliminary negotiation; and had the board accepted this bid unconditionally, the contract would then have become mutually binding, and the defendant, in order to escape liability, would not be heard to say that he is not bound because his bid was not accompanied by a certified check for five per cent. of the bid. But the board did not accept the bid unconditionally; the clerk was directed to request of McMahan to furnish a certified check for five per cent. of his bid, and when Taylor offered to deposit the $2,000 in lieu of the five per cent., and this amount was accepted by the board and the deposit made, each party became bound, the board to furnish the bonds, and McMahan became bound by his offer, provided that Taylor was acting as the agent of McMahan. In our opinion, the evidence clearly

establishes the agency of Taylor. If Taylor was not acting for McMahan in making the deposit of the two checks amounting to $2,000 why would McMahan be stopping the payment thereon? In addition to this circumstance, we find McMahan, after the telegram to the bank, and after the deposit of the $2,000 by Taylor, trying to make sales of the bonds to certain banks, and nowhere in his evidence did he deny that Taylor was not authorized to make the deposit. All the evidence clearly establishes that he unmistakably ratified the action of the bank in submitting the telegram to the board of supervisors, and ratified the action of Taylor in depositing the $2,000 in lieu of the certified check for five per cent. of his bid.

Under the facts in the case, we believe that the question of agency was properly submitted to the jury. We have carefully examined the instruction given by the court on this point, and find that the same is correct.

In view of the conclusions we have reached as above set forth, we deem it unnecessary to pass upon the remaining assignment of error, as the same is fully covered by the conclusions on the first assignment.

We therefore conclude that the judgment of the trial court should be affirmed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.