C. JENNEY v. THE CITY OF DES MOINES, et al., Appellants.

**Public Improvements:** MUNICIPAL CORPORATIONS: *Specifications.* Plans and specifications of a public improvement furnished by the city engineer to the board of public works of a city as required by Code, Twenty-second General Assembly, chapter 1, section 3, are not insufficient because not as full and complete as it was possible to make them, if they are sufficiently comprehensive, definite, and elaborate for the purpose intended.

SAME. The requirements of Code, Twenty-second General Assembly, chapter 1, section 5, that the proposals for bids for a public improvement shall state the amount and different kinds of material to be furnished, are sufficiently complied with, where the plans and specifications which are made a part of the proposal, and are on file in the office of the board of public works, and open to the inspection of all persons, furnish all the data from which to determine the exact amount and kind of all the material required for the completion of the structure, although the amount for the several kinds of material are not computed and written out.

SAME. The requirement in the specifications for a public improvement that each bidder shall submit with his bid "strain sheet and fully detailed plans," does not affect the validity of the award of the contract where the bids were made upon the plans and specifications furnished by the city, and the detailed plans furnished by

the bidders were merely to advise the authorities of the bidder's interpretation of the plans and specifications and their method of execution.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

WEDNESDAY, OCTOBER 20, 1897.

ACTION in equity to cancel a contract for the erection of a bridge, and to enjoin the city council and the board of public works from proceeding thereunder. Decree for plaintiff, and defendants appeal.—*Reversed.*

*J. K. Macomber*, city attorney, for appellants City of Des Moines, John Sherman, and George C. Sims.

*Read & Read* and *J. I. Myerly* for appellant John H. Killmar.

*Barcroft & McCaughan* for appellee.

KINNE, C. J.—I.  A careful consideration of this case leads us to the conclusion that the following statement of the facts in the argument of counsel for appellant Killmar is substantially correct: "The bridge in question was ordered constructed by an ordinance of the city council duly passed; that plans and specifications for said bridge were prepared by the city engineer, and submitted to and approved by the board of public works, before the board advertised for proposals; that the board did duly advertise for proposals for the construction of said bridge, as required by law; that the defendant John H. Killmar and others submitted bids, in response to said advertisement, for the construction of the bridge according to the plans and specifications of the city on file, as stated in the advertisement for bids; that all of the bids were regularly filed with the board of public works on or before the last day fixed for

receiving bids; that Killmar's bid was the lowest of all
the bids submitted; that Killmar's bid was accepted by
the board of public works and the city council, and a
contract entered into with the said Killmar by the board
of public works, on behalf of the city of Des Moines, on
the sixth day of August, 1896; that said contract so
entered into was regularly approved by the city council;
that there has been no bad faith or fraud, or any unfair
advantage or intentional wrong, on the part of the city
council or city engineer or board of public works or
Killmar, with respect to any of the transactions relating
to the letting and construction of this bridge; that all of
the steps required to be taken by the board of public
works, the city engineer, and city council, by the ordi-
nances of the city or statutes of the state, have been duly
complied with, unless it be, as it is claimed, that the
plans and specifications which were prepared by the
city engineer and adopted by the board, and upon which
proposals were invited and submitted, were not such as
the law required. It is claimed in the petition,
among other things, that the plans and specifica-
tions of the city were such that competitive bids
could not be, and in fact were not, made thereon; that
Killmar's bid was not the lowest bid." Plaintiff's con-
tention as to the illegality of the contract is based upon
the following provisions of the statutes of the state and
of the ordinances of the city: In chapter 1 of the Acts of
the Twenty-second General Assembly (section 3), it is
provided: "The city engineer shall furnish said board
(board of public works) from time to time estimates of
the cost of material for any improvement to be ordered
or advertised for by said board, together with the plans
and specifications therefor." Section 5 of the same
act provides: "Said board of public works shall adver-
tise for bids and make all contracts on behalf of the
city  *  *  *  whenever the same shall be ordered by
the city council,  *  *  *  and proposals for bids shall

be published at least two weeks in two of the daily newspapers in such cities. * * * The proposals for bids shall state the amount and different kinds of material to be furnished, and kinds of improvement, and the time and conditions upon which bids shall be received. The board shall have power to reject any and all bids. All such contracts shall be made with the lowest bidder, but it shall not be necessary before proposals are published or bids received to determine specifically the kind of material to be used." The provisions of the ordinance being substantially the same as the requirements of section 3 of the statute, they need not be stated. It appears that the city engineer did furnish the board with plans and specifications for the bridge in question, which we think were in compliance with the statute. Now, a plan is a design, a delineation, or projection on a plane surface of the ground lines of a structure, which are reduced in size, the relative positions of which, and their proportions, are preserved. A specification is said by the same author to denote a particular or detailed statement of the various elements involved. Black, Law Dictionary, tits. "Plan," "Specification." It is not practicable to set out in this opinion the plans and specifications in fact furnished. The evidence shows without dispute that, while the plans and specifications were not as full and complete as it was possible to make them, still they were quite comprehensive, and sufficiently definite and elaborate for the purpose intended, and conformed to the statutory requirements.

II. It is said that the advertisement of the board of public works for proposals was defective in not stating the amount and different kinds of material to be furnished. The statute and ordinance required that "proposals for bids shall state the amount and different kinds of material to be furnished." Now, by the very terms of the printed advertisement inviting bids, the plans and specifications heretofore

mentioned were made a part of said proposals. A fair construction of the statute and ordinance would not require the advertisement to contain in detail the number of pounds of iron or other material to be used in the structure. If, from the advertisement, and the plans and specifications which were a part of the proposal, and which were on file in the office of the board, and open to the inspection of all persons, the amount and different kinds of material appeared, or if from what did appear in said plans and specifications the amount and different kinds of material might be determined beyond question by mere computation, then the spirit and intent of the law and ordinance were complied with, even though said amount of the different kinds of material was not computed and stated. In other words, here we have an advertisement for proposals wherein the plans and specifications are so full that they furnish all the data from which to determine the exact amount and kind of all the materials which were necessary for the completion of the structure. Nothing remained to be done save to make the computations from the data given, and to state the result. Every bidder was, by the facts and data given, enabled to know by computation what material would be needed, and the amount of it. It would be technical construction, indeed, which would hold that, though the proposals had furnished data from which all holders could compute and with certainty arrive at the exact amount of the several kinds of material to be used, still, because the city engineer had not made the computation, the proposals should be held insufficient. It is a question, simply, whether, under the statute, we should hold this proposal insufficient because the amounts of the several kinds of material were not computed and written out, when every fact was given from which any bridge man could compute with accuracy the amounts of said several kinds of material. The evidence shows that,

from the data furnished, any man competent to build a bridge could, by simple computation, arrive at the exact amount of the several kinds of material required. To illustrate, the dimensions of the floor of the bridge, and the kind and thickness of the lumber it shall be built of, are stated, but the number of feet of lumber to be contained in it is not computed and stated. Are we therefore to hold that the statute has not been complied with? Such a construction, it occurs to us, would be unwarranted.

III. In the specifications it is provided that each bidder must submit, with his bid, "strain sheet and fully detailed plan." Counsel argue that the proposals called for bids based upon said plans furnished by the bidder, and hence each man bid on his own plans and specifications, and therefore there could be no lowest bidder. This claim we do not think is sustained by the record. The bids were made upon plans and specifications furnished by the city, and the detailed plans furnished by bidders were to advise the city authorities of the interpretation of its plans and specifications by the bidder, and their method of execution. The bids were competitive, were made from the city's plans and specifications, and no fraud or bad faith is claimed to have existed or been exercised. No one is here claiming that the work was let for too large a sum, and, in fact, the whole case impresses us as one wherein pure technicalities are relied upon by appellant which go to the form rather than to the substance of the provisions of the statute and ordinances. The decree of the district court is REVERSED.